## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 09-cv-02057-MSK-MEH

**DEANNA DOUGHERTY,**

    **Plaintiff,**

**v.**

**TYLER TECHNOLOGIES, Inc.,**

    **Defendants,**

---

### AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff, **DEANNA DOUGHERTY,** by and through her attorney Rosemary Orsini of the law firm BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., for her Amended Complaint and Jury Demand, states, alleges and avers as follows:

### I.  INTRODUCTION

Plaintiff, Deanna Dougherty (herein after "Ms. Dougherty"), brings claims for disability and sex discrimination against her former employer, Defendant Tyler Technologies, Inc.  At the time relevant to this matter, Ms. Dougherty was a Network Administrator for Defendant. Beginning in July 2007, as a result of a change in management, Defendant unlawfully discriminated against Ms. Dougherty by refusing to reasonably accommodate her disability, creating a hostile work environment, retaliating against her for engaging in protected activity and ultimately constructively discharging her, on the basis of her disability (chronic back pain and nerve damage) and sex (female).

### II.  PARTIES

1. Plaintiff Deanna Dougherty is currently, and at all times relevant to this matter, a resident of the State of Colorado.

2. Defendant Tyler Technologies, Inc. (herein after "Tyler") is a Delaware Corporation with a principal place of business in Dallas, Texas. Tyler has offices located throughout the United States and maintains an office in the State of Colorado.

### III.  JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this matter involves a question of federal law arising under the laws of the United States.

4. The Court has personal jurisdiction over Tyler because it is engaged in the transaction of business in Colorado, which transaction of business gives rise to this cause of action. Tyler also has had such continuous and systematic contacts within the state of Colorado including but not limited to maintaining offices within the state, hiring employees within the state, and entering into contracts with residents of the state so as to constitute a "presence" within the state. The Court also has personal jurisdiction over Defendant because Defendant has appointed a registered agent for service of process within Colorado. In addition, the Court has personal jurisdiction over Defendant pursuant to the Colorado long arm statute, C.R.S. § 13-1-124, because Defendant transacted business within the state of Colorado and has sufficient minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

5. This Court has subject matter jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367 because the state-law claims are so related to the claims under which the Court has

jurisdiction under § 1331 and 18 U.S.C. § 1514A(b)(1)(B) that they form part of the same case or controversy.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as all employment practices alleged to be unlawful were committed within the District of Colorado.

### IV.  GENERAL ALLEGATIONS

7. This is an action under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act 42 USC § 12101 *et seq.* (the "ADA").

8. Defendant is an "employer" within the meaning of Title VII.

9. Plaintiff properly exhausted her administrative remedies by timely filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").

10. The Plaintiff has filed this action within 90 days of receiving her Notice of Right to Sue from the administrative agency.

11. Ms. Dougherty commenced her employment at Tyler in August 2005.  She was employed as a Network Administrator.

12. Ms. Dougherty's job duties included installation and support of software for clients, administration of multiple domains, daily management of in-house technical support as well as direct support to clients.  The majority of Ms. Dougherty's clients were state and county governments.

13. Ms. Dougherty was one of four Network Administrators at Tyler.

14. Ms. Dougherty was the only female Network Administrator at Tyler and the only female on her team.

15. Ms. Dougherty performed exceptionally well at Tyler and was a considerable asset to the company. During the two years that Ms. Dougherty was employed by Tyler she received positive performance reviews commending her for her communication skills, time management and strong relationships with clients.

16. Ms. Dougherty was valued so highly by Tyler that she received $10,000 in raises over the two years she was employed there.

17. Ms. Dougherty suffers from severe chronic back pain caused by facet joint deterioration and nerve damage.

18. Tyler was put on notice of Ms. Dougherty's disability in October 2005 and again in April 2006 when Ms. Dougherty underwent back surgery to correct an enlarged herniated disk with a floating fragment. Ms. Dougherty took six weeks short-term disability leave for each surgery. After returning from her surgeries, Ms. Dougherty informed Tyler of restriction her doctor had placed her on which required that she not lift or push more than 15 pounds.

19. Even after the surgeries, Ms. Dougherty suffered on a daily basis from severe chronic back pain and nerve damage. Due to the continuing pain Ms. Dougherty underwent painful procedures during which her nerve endings were burned every four to six months.

20. Ms. Dougherty's nerve damage requires her to frequently use the restroom every 30 to 60 minutes.

21. Due to her severe nerve damage and joint deterioration and pain, Ms. Dougherty is limited in the following daily life activities: standing, sitting, and control of major bodily functions. Also, her emotional and mental processes such as thinking, concentrating and interacting

with others have been impaired both by the constant pain as well as the medications she must take to manage her pain.

22. In addition to the accommodation of being allowed frequent restroom breaks, Ms. Dougherty required an accommodation of standing and walking around periodically.

23. Prior to July 2007, Ms. Dougherty's manager, Mr. Gabe Miller (herein after "Mr. Miller"), provided Ms. Dougherty with reasonable accommodation for her disability by modifying her job duties so that she did not lift or push more than 15 pounds. Mr. Miller also reasonably accommodated Ms. Dougherty's need to walk and frequent the restroom.

24. As a result of her job duty modifications for reasonable accommodation, Mr. Miller no longer required Ms. Dougherty to travel as part of her job duties. Accordingly, Tyler's reasonable accommodation of Ms. Dougherty's disability included increased job duties related to internal support for Tyler employees and client liaison responsibilities.

25. Ms. Dougherty was able to satisfactorily perform her job duties with these reasonable accommodations.

26. In July 2007, Terry Bohanning (herein after "Mr. Bohanning") began transitioning to the position of Manager which had previously been held by Mr. Miller. Once Mr. Bohanning became Manager he would be Ms. Dougherty's supervisor. For about a month Mr. Miller trained Mr. Bohanning to take over the position.

27. When the transition was announced, Tyler held a meeting for the purpose of introducing Mr. Bohanning. At the meeting employees whom Mr. Bohanning would be supervising were asked to describe their job duties and role on the team.

28. During this introduction meeting, it was brought to Mr. Bohanning's attention that Ms. Dougherty's disability was accommodated by not requiring her to travel as part of her job duties.

29. On November 8, 2007 Tyler held a team meeting. Mr. Bohanning asked Ms. Dougherty to stay behind after the meeting adjourned.

30. Mr. Bohanning reprimanded Ms. Dougherty for being away from her desk too often and accused her of being away from her desk more often than any other employee.

31. Ms. Dougherty explained that she needed to get up from her desk because of her disability. Mr. Bohanning told Ms. Dougherty that he "didn't care" and that she was no longer allowed to be away from her desk for any reason.

32. Ms. Dougherty asked if this new rule applied to all employees or only to her. Mr. Bohanning refused to respond.

33. Ms. Dougherty offered to provide Mr. Bohanning with a doctor's note to verify her need for accommodation. Mr. Bohanning did not respond to Ms. Dougherty's offer to provide a doctor's note.

34. Ms. Dougherty provided Mr. Bohanning with a doctor's note on November 13, 2008 anyway.

35. Ms. Dougherty had equal responsibility and workload in relation to her male colleagues.

36. After Mr. Bohanning became Manager, Ms. Dougherty's duties were significantly reduced and restricted. Ms. Dougherty was limited to "help desk" tasks and Tyler's internal technical support. Mr. Bohanning's limitation that Ms. Dougherty not leave her desk

further limited her ability to provide internal technical support as she could not respond to employee problems in person.

37. When Mr. Bohanning reduced her responsibilities Ms. Dougherty requested additional work duties and assignments. Mr. Bohanning disregarded these requests and distributed the work amongst the four male Network Administrators on Ms. Dougherty's team.

38. The male Network Administrators also asked Mr. Bohanning to give Ms. Dougherty assignments. Mr. Bohanning likewise refused.

39. Instead of returning Ms. Dougherty an equivalent amount of responsibility as her male colleagues, Mr. Bohanning began assigning Ms. Dougherty administrative tasks. Mr. Bohanning assigned Ms. Dougherty to make phone calls and send faxes for him. These tasks were inappropriate to assign to Ms. Dougherty as Tyler had a receptionist who was responsible for such duties.

40. In addition, Mr. Bohanning constantly demeaned Ms. Dougherty in front of her male colleagues. For example, the day after Ms. Dougherty requested a new chair because of her chair's poor condition, Mr. Bohanning purchased a new chair for himself.

41. Mr. Bohanning's differential treatment of Ms. Dougherty was so obvious to Ms. Dougherty's male colleagues that it became a running joke. Ms. Dougherty's male colleagues would jokingly ask her to get them coffee and send faxes for them. Ms. Dougherty was sarcastically called a "stupid woman, not smart enough to answer Bohanning's questions."

42. Although the male employees' were only mocking Mr. Bohanning's actual discriminatory conduct, Ms. Dougherty was nonetheless stigmatized by their mockery.

43. After Mr. Bohanning becoming Manager, Ms. Dougherty was treated differently because of her sex and disability.

44. Ms. Dougherty contacted Steve Nieman (herein after "Mr. Nieman"), CEO of Tyler, and requested to be transferred to a different team that was not supervised by Mr. Bohanning.

45. Ms. Dougherty specifically notified Mr. Nieman that Mr. Bohanning was not giving her equal job responsibilities because she was a woman and also that he was not allowing her reasonable accommodation for her disability.

46. Ms. Dougherty also had a conversation with Human Resources representative Teresa Friel (herein after "Ms. Friel") regarding Mr. Bohanning's discrimination. When Ms. Friel indicated that she did not understand Ms. Dougherty's problem, Ms. Dougherty clarified that she believed that Mr. Bohanning treated her differently because she was a woman.

47. Despite having reported Mr. Bohanning's discriminatory behavior to both the CEO and Human Resources Department of Tyler, Tyler did not investigate Ms. Dougherty's complaints, review Mr. Bohanning's management and no actions were taken to remedy the discrimination.

48. On Tuesday, November 6, 2007 Ms. Dougherty again reported Mr. Bohanning's discriminatory behavior to Ms. Friel in writing. Ms. Dougherty repeated her request for an inter-company transfer. Ms. Dougherty also requested that she be allowed to work remotely as an alternative to transfer.

49. In this written report Ms. Dougherty notified Ms. Friel that she had reported the discrimination to Mr. Nieman.

50. Ms. Friel denied Ms. Dougherty's requests for transfer and to work from home, but assured her that she would investigate the matter.

51. Tyler never investigated Ms. Dougherty's discrimination reports.

52. Two days later, on Thursday November 8, 2007, Mr. Bohanning reprimanded Ms. Dougherty for leaving her desk. He also again stated that he "didn't care" that Ms. Dougherty needed accommodation for her disability.

53. Following this reprimand, Ms. Dougherty made another written report of Mr. Bohanning's discrimination with Tyler's Human Resources Department.

54. In her November 8, 2007 complaint Ms. Dougherty specifically identified Mr. Bohanning's conduct as discriminatory based on her sex and disability. Ms. Dougherty again pleaded to be allowed to work under a different Manager or remotely from home.

55. Ms. Dougherty was so desperate to escape Mr. Bohanning's discrimination that she told Ms. Friel that she would transfer to any available position under a different Manager, even if it would mean a demotion or less pay.

56. The following Monday, Ms. Friel acknowledged Ms. Dougherty's report of discrimination. During their conversation Ms. Dougherty became emotional and cried uncontrollably.

57. Four days later, on November 14, 2007, Ms. Dougherty was required to attend a meeting with Mr. Bohanning and Ms. Friel.

58. Ms. Dougherty was led to believe that the meeting was called to work out a solution to Mr. Bohanning's discrimination.

59. At the meeting Ms. Dougherty was immediately ambushed with two disciplinary write-ups. She received one write-up for being out of her chair and another write-up for becoming emotional and speaking too loudly while speaking with Ms. Friel.

60. The write-ups sought to blame Ms. Dougherty for the results of Mr. Bohanning's discriminatory behavior. Ms. Dougherty was concerned because of the serious nature of the two write-ups, however improper, that she would be terminated based on the write-ups.

61. Ms. Dougherty was in shock that Tyler would place blame on her instead of putting an end to the discrimination, and refused to sign the write-ups.

62. When Ms. Dougherty refused to sign the write-ups, Mr. Bohanning told her that her only other option was to resign. Ms. Dougherty would be given two weeks pay in exchange for her voluntarily resignation.

63. Ms. Dougherty asked if she had any other choices. Mr. Bohanning told her she did not.

64. Tyler placed Ms. Dougherty in the position of having to choose between voluntarily resigning or signing two false write-ups with the threat that she would subsequently be terminated based on the write-ups.

65. Tyler constructively discharged Ms. Dougherty by forcing her to work in a hostile work environment resulting from the discriminatory treatment to which she had been subjected. Tyler's failure to investigate Ms. Dougherty's claims of discrimination, take any appropriate remedial action, Tyler's punishment of her, and Tyler's clear attempt to force her out, Ms. Dougherty had no option but to resign on November 16, 2007.

## V.  FIRST CLAIM FOR RELIEF

**Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* Discrimination based on Disability**

66. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

67. Ms. Dougherty has a physical impairment that substantially limits one or more of her major life activities, including but not limited to: standing, sitting, control of a major bodily function (bladder), thinking, concentrating and interacting with others.

68. Ms. Dougherty is disabled within the meaning of the ADA.

69. Ms. Dougherty notified Defendant of her disability.

70. Defendant regarded Ms. Dougherty as being disabled.

71. Ms. Dougherty was capable of performing her essential job functions with the reasonable accommodations of being allowed to frequent the restroom and standing and walking around.

72. Defendant, willfully, intentionally and with malice or reckless indifference failed to provide reasonable accommodations for Ms. Dougherty's disability.

73. Ms. Dougherty suffered adverse employment actions as a result of Defendant's discrimination against persons with disabilities, including termination.

74. Ms. Dougherty has suffered damages as stated herein as a result of discrimination based on disability.

75. Ms. Dougherty is entitled to recover damages caused by Defendant's discrimination, including loss of wages, loss of benefits, emotional distress, physical pain and suffering, loss of future wage potential, loss of future benefits, loss of out of pocket expenses incurred, and statutory damages.

76. Ms. Dougherty is entitled to reasonable attorney fees and costs of prosecuting this action.

**WHEREFORE**, Plaintiff prays for relief as herein requested.

## VI.  SECOND CLAIM FOR RELIEF

### Retaliation in Violation of the ADA, 42 U.S.C. §§ 12203(a)

77. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

78. Ms. Dougherty reported discrimination to Ms. Friel and Mr. Nieman on more than one occasion.

79. On November 10, 2007 Ms. Dougherty made a formal written report of discrimination and Mr. Bohanning's refusal to accommodate her disability to Defendant's Human Resources Department.

80. Ms. Dougherty engaged in conduct in opposition to disability discrimination and otherwise exercised her statutory rights by exercising her internal remedies to complain to Defendant of discrimination.

81. Defendant willfully terminated Ms. Dougherty less than four days after she filed the written report about discrimination.

82. Defendant willfully and intentionally retaliated against Ms. Dougherty for reporting discrimination and lack of reasonable accommodation by terminating her.

83. Defendant's retaliation were a direct and proximate cause of Ms. Dougherty's damages.

**WHEREFORE**, Plaintiff prays for relief as herein requested.

## VII.  FOURTH CLAIM FOR RELIEF

## Sex Discrimination and Hostile Work Environment in Violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e-2(a) and C.R.S. § 24-34-402

84. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

85. Ms. Dougherty, as a female, was entitled to protections under the law, including protection from harassment based on sex and disparate treatment based on sex.

86. Ms. Dougherty was satisfactorily performing her job duties at the time she was subjected to reduced responsibility, different job duties, demeaning job assignments, refusal to take action to correct discrimination and termination.

87. Male employees similarly situated to Ms. Dougherty were not subjected to reduced responsibility, different job duties, demeaning job assignments, refusal to take action to correct discrimination and termination.

88. Defendant knowingly and intentionally engaged in discrimination against Ms. Dougherty because of her sex.

89. Ms. Dougherty's sex was a motivating factor in Defendant's different treatment of Ms. Dougherty.

90. Defendant's conduct as described above constitutes discrimination on the basis of sex in violation of both federal and state statutes, including Title VII of the Civil Rights Act of 1964 as amended and C.R.S. § 24-34-402.

91. Ms. Dougherty suffered adverse employment actions as a result of Defendant's discrimination including unfair job requirements, reduced responsibility, different and

demeaning job assignments, hostile work environment, unwarranted discipline, refusal to take actions to correct discrimination and termination.

92. Ms. Dougherty's adverse employment actions were the direct and proximate effect of Defendant's sex discrimination against Ms. Dougherty.

93. Ms. Dougherty is entitled to recover damages caused by Defendant's discrimination, including loss of wages, loss of benefits, emotional distress, physical pain and suffering, loss of future wage potential, loss of future benefits, loss of out of pocket expenses, and statutory damages.

94. Ms. Dougherty is entitled to reasonable attorney fees and costs of prosecuting this action under federal and state law.

**WHEREFORE**, Plaintiff prays for relief as herein requested.

## VIII. FIFTH CLAIM FOR RELIEF

**Retaliation in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a) and C.R.S. § 24-34-402**

95. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

96. Ms. Dougherty engaged in conduct in opposition to sex discrimination and harassment and otherwise exercised her statutory rights by exercising her internal remedies to complain to Defendant of discrimination and harassment.

97. In violation of both federal and state law, Defendant knowingly and willfully retaliated against Ms. Dougherty's protected conduct in opposing discrimination including

unwarranted discipline, denial of reasonable accommodation for her disability, change in responsibility, demeaning job assignments and termination of Ms. Dougherty.

98. Defendant's retaliation against Ms. Dougherty was malicious and/or with reckless indifference to her legal rights.

99. Ms. Dougherty has suffered damages as stated herein from Defendant's retaliatory conduct.

100. Ms. Dougherty is entitled to recover damages caused by Defendant's retaliation, including loss of wages, loss of benefits, emotional distress, physical pain and suffering, loss of future wage potential, loss of future benefits, loss of out of pocket expenses incurred, punitive and statutory damages.

101. Ms. Dougherty is entitled to reasonable attorney fees and costs of prosecuting this action under both federal and state law.

**WHEREFORE**, Plaintiff prays for relief as herein requested.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Deanna Dougherty prays for relief as follows:

1. Nonpecuniary damages, including but not limited to, pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, and deprivation of civil rights;

2. Pecuniary damages, including but not limited to, loss of earnings and/or earnings capacity, loss of fringe benefits, out of pocket expenses in an attempt to mitigate her losses, and all other economic losses;

3. Back pay, front pay, punitive and statutory penalties and damages;

4. Prejudgment and postjudgment interest as provided for by law;

5. Attorneys' fees, costs and expenses of this action as provided for by law;

6. Such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 12th day of November, 2009.

**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**

*Original signature of Rosemary Orsini on file at*
*Burg Simpson Eldredge Hersh & Jardine, P.C.*

/s/ Rosemary Orsini
Rosemary Orsini
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
Attorney for Plaintiff

Plaintiff's Address:
5502 W. 3rd Ave
Lakewood, CO
80226