**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 09-cv-02057 MSK-MEH

DEANNA DOUGHERTY,

    Plaintiff,

v.

TYLER TECHNOLOGIES, INC.

    Defendant.

_____

**SCHEDULING ORDER**
_____

**1. DATE OF CONFERENCE**
**AND APPEARANCES OF COUNSEL AND PRO SE PARTIES**

The Scheduling/Planning Conference was held on February 4, 2010 at 9:45 a.m. Rosemary Orsini of the firm of Burg Simpson Eldredge Hersh & Jardine, P.C., 40 Inverness Drive East, Englewood, Colorado 80112; 303-792-5595 represented the Plaintiff Deanna Dougherty. Tarek F.M. Saad of the firm JIN, SCHAUER & SAAD LLC, 600 17th Street, Suite 2800, South Tower, Denver, CO 80202, Phone Number: (720) 889-2211 and Paulo B McKeeby and John D. Bosco of the firm MORGAN LEWIS & BOCKIUS LLP, 1717 Main Street, Suite 3200, Dallas, TX 75201, Phone Number: (214) 466-4000 represented the Defendant Tyler Technologies Inc.

## 2. STATEMENT OF JURISDICTION

This case is within the Court's original subject matter pursuant to 28 U.S.C. § 1331 because it involves a federal question. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as they are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

This Court has personal jurisdiction over the parties because Plaintiff is a resident of the State of Colorado. This Court has personal jurisdiction over Defendant because it is engaged in the transaction of business in Colorado, which transaction of business gives rise to this cause of action. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as all employment practices alleged by Plaintiff to be unlawful occurred within the District of Colorado.

## 3. STATEMENT OF CLAIMS AND DEFENSES

**Plaintiff's Claims**

a.      Plaintiff's statement:

This is an employment discrimination case. Plaintiff asserts a claim under Federal law, 42 U.S.C. § 2000e-3, 2000e-5, and 42 U.S.C. § 1981 and state law C.R.S. § 24-34-402 for disparate treatment on the basis of sex and retaliation against her former employer, Tyler Technologies Inc. (herein after "Tyler" or "Defendant").

In addition, Plaintiff asserts claims for discrimination under the Americans with Disabilities Act 42 USC § 12101 *et seq.* (the "ADA").

Ms. Dougherty's job duties included installation and support of software for clients, administration of multiple domains, daily management of in-house technical support as well as direct support to clients. The majority of Ms. Dougherty's clients were state and county

governments.  Ms. Dougherty was one of four Network Administrators at Tyler. Ms. Dougherty was the only female Network Administrator at Tyler and the only female on her team.  Ms. Dougherty performed exceptionally well at Tyler and was a considerable asset to the company. During the two years that Ms. Dougherty was employed by Tyler she received positive performance reviews commending her for her communication skills, time management and strong relationships with clients.  Ms. Dougherty was valued so highly by Tyler that she received $10,000 in raises over the two years she was employed there.

Ms. Dougherty suffers from severe chronic back pain caused by facet joint deterioration and nerve damage.  Due to her severe nerve damage and joint deterioration and pain, Ms. Dougherty is limited in the following daily life activities: standing, sitting, and control of major bodily functions.  Also, her emotional and mental processes such as thinking, concentrating and interacting with others are impaired both by the constant pain as well as the medications she must take to manage her pain.

Tyler was put on notice of Ms. Dougherty's disability in October 2005 and again in April 2006 when Ms. Dougherty underwent back surgery to correct an enlarged herniated disk with a floating fragment.  Ms. Dougherty took six weeks short-term disability leave for each surgery. After returning from her surgeries, Ms. Dougherty informed Tyler of restrictions her doctor had placed her on which required that she not lift or push more than 15 pounds.   Even after the surgeries, Ms. Dougherty suffered on a daily basis from severe chronic back pain and nerve damage.  Due to the continuing pain, Ms. Dougherty had to undergo painful procedures during which her nerve endings were burned every four to six months.

Ms. Dougherty's nerve damage requires her to frequently use the restroom every 30 to 60 minutes.  In addition to the accommodation of being allowed frequent restroom breaks, Ms.

Dougherty required an accommodation of standing and walking around periodically.

Prior to July 2007, Ms. Dougherty's manager, Mr. Gabe Miller (herein after "Mr. Miller"), provided Ms. Dougherty with reasonable accommodation for her disability by modifying her job duties so that she did not lift or push more than 15 pounds. Mr. Miller also reasonably accommodated Ms. Dougherty's need to walk and frequent the restroom.

As a result of her job duty modifications for reasonable accommodation, Mr. Miller no longer required Ms. Dougherty to travel as part of her job duties. Accordingly, Tyler's reasonable accommodation of Ms. Dougherty's disability included increased job duties related to internal support for Tyler employees and client liaison responsibilities. Ms. Dougherty was able to satisfactorily perform her job duties with these reasonable accommodations.

In July 2007, Terry Bohanning (herein after "Mr. Bohanning") began transitioning to the position of Manager which had previously been held by Mr. Miller. Mr. Miller trained Mr. Bohanning to take over the position for about a month. Mr. Bohanning became Ms. Dougherty's supervisor once he became Manager.

Tyler held a meeting for the purpose of introducing Mr. Bohanning when the transition was announced. At the meeting employees whom Mr. Bohanning would be supervising were asked to describe their job duties and role on the team. During this introduction meeting, it was brought to Mr. Bohanning's attention that Ms. Dougherty's disability was accommodated by not requiring her to travel as part of her job duties.

On November 8, 2007 Tyler held a team meeting. Mr. Bohanning asked Ms. Dougherty to stay behind after the meeting adjourned. Mr. Bohanning reprimanded Ms. Dougherty for being away from her desk too often and accused her of being away from her desk more often than any other employee. Ms. Dougherty explained that she needed to get up from her desk

because of her disability.  Mr. Bohanning told Ms. Dougherty that he "didn't care" and that she was no longer allowed to be away from her desk for any reason.  Ms. Dougherty asked if this new rule applied to all employees or only to her.  Mr. Bohanning refused to respond. Ms. Dougherty offered to provide Mr. Bohanning with a doctor's note to verify her need for accommodation.  Mr. Bohanning did not respond to Ms. Dougherty's offer to provide a doctor's note.  Ms. Dougherty provided Mr. Bohanning with a doctor's note on November 13, 2008 anyway.

Ms. Dougherty had equal responsibility and workload in relation to her male colleagues prior to Mr. Bohanning becoming manager.  After Mr. Bohanning became Manager, however, Ms. Dougherty's duties were significantly reduced and restricted.  Ms. Dougherty was limited to "help desk" tasks and Tyler's internal technical support.  Mr. Bohanning's limitation that Ms. Dougherty not leave her desk further limited her ability to provide internal technical support as she could not respond to employee problems in person.  Ms. Dougherty requested additional work duties and assignments when Mr. Bohanning reduced her responsibilities.  Mr. Bohanning disregarded these requests and distributed the work among the four male Network Administrators on Ms. Dougherty's team.  The male Network Administrators also asked Mr. Bohanning to give Ms. Dougherty assignments.  Mr. Bohanning refused.

Instead of returning to Ms. Dougherty an equivalent amount of responsibility as her male colleagues, Mr. Bohanning began assigning Ms. Dougherty administrative tasks.  Mr. Bohanning assigned Ms. Dougherty to make phone calls and send faxes for him.  These tasks were inappropriate to assign to Ms. Dougherty as Tyler had a receptionist who was responsible for such duties.

In addition, Mr. Bohanning constantly demeaned Ms. Dougherty in front of her male

colleagues.  On one occassion, the day after Ms. Dougherty requested a new chair because of her chair's poor condition, Mr. Bohanning purchased a new chair for himself.

Mr. Bohanning's differential treatment of Ms. Dougherty was so obvious to Ms. Dougherty's male colleagues that it became a running joke.  Ms. Dougherty's male colleagues would jokingly ask her to get them coffee and send faxes for them.  Ms. Dougherty was sarcastically called a "stupid woman, not smart enough to answer Bohanning's questions."  Although the male employees' were only mocking Mr. Bohanning's actual discriminatory conduct, Ms. Dougherty was nonetheless stigmatized by their mockery.

After Mr. Bohanning becoming Manager, Ms. Dougherty was treated differently because of her sex and disability. Ms. Dougherty contacted Steve Nieman (herein after "Mr. Nieman"), CEO of Tyler, and requested to be transferred to a different team that was not supervised by Mr. Bohanning. Ms. Dougherty specifically notified Mr. Nieman that Mr. Bohanning was not giving her equal job responsibilities because she was a woman and also that he was not allowing her reasonable accommodation for her disability.

Ms. Dougherty also had a conversation with Human Resources representative Teresa Friel (herein after "Ms. Friel") regarding Mr. Bohanning's discrimination.  When Ms. Friel indicated that she did not understand Ms. Dougherty's problem, Ms. Dougherty clarified that she believed that Mr. Bohanning treated her differently because she was a woman.  Despite having reported Mr. Bohanning's discriminatory behavior to both the CEO and Human Resources Department of Tyler, Tyler did not investigate Ms. Dougherty's complaints or review Mr. Bohanning's management and no actions were taken to remedy the discrimination.

On Tuesday, November 6, 2007 Ms. Dougherty again reported Mr. Bohanning's discriminatory behavior to Ms. Friel in writing.  Ms. Dougherty repeated her request for an inter-

company transfer.  Ms. Dougherty also requested that she be allowed to work remotely as an alternative to transfer. Ms. Dougherty notified Ms. Friel in writing that she had reported the discrimination to Mr. Nieman.  Ms. Friel denied Ms. Dougherty's requests for transfer and to work from home, but assured her that she would investigate the matter.  Tyler never investigated Ms. Dougherty's claims of discrimination.

Two days later, on Thursday November 8, 2007, Mr. Bohanning reprimanded Ms. Dougherty for leaving her desk.  He also again stated that he "didn't care" that Ms. Dougherty needed accommodation for her disability.  Following this reprimand, Ms. Dougherty made another written report of Mr. Bohanning's discrimination with Tyler's Human Resources Department.

In her November 8, 2007 complaint Ms. Dougherty identified Mr. Bohanning's conduct as discriminatory based on her sex and disability.  Ms. Dougherty again pleaded to be allowed to work under a different Manager or remotely from home.  Ms. Dougherty was so desperate to escape Mr. Bohanning's discrimination that she told Ms. Friel that she would transfer to any available position under a different Manager, even if it would mean a demotion or less pay.   The following Monday, Ms. Friel acknowledged receiving Ms. Dougherty's report of discrimination. During their conversation Ms. Dougherty became emotional and cried uncontrollably.

Four days later, on November 14, 2007, Ms. Dougherty was required to attend a meeting with Mr. Bohanning and Ms. Friel. Ms. Dougherty was led to believe that the meeting was called to work out a solution to Mr. Bohanning's discrimination. At the meeting Ms. Dougherty was immediately ambushed with two disciplinary write-ups.  She received one write-up for being out of her chair and another write-up for becoming emotional and speaking too loudly while speaking with Ms. Friel.   The write-ups sought to blame Ms. Dougherty for the results of Mr.

7

Bohanning's discriminatory behavior.  Ms. Dougherty was concerned because of the serious nature of the two write-ups, however improper, that she would be terminated based on the write-ups. Ms. Dougherty was in shock that Tyler would place blame on her instead of putting an end to the discrimination, and refused to sign the write-ups.  When Ms. Dougherty refused to sign the write-ups, Mr. Bohanning told her that her only other option was to resign.  Ms. Dougherty would be given two weeks pay in exchange for her voluntarily resignation.  Ms. Dougherty asked if she had any other choices.  Mr. Bohanning told her she did not.

Tyler placed Ms. Dougherty in the position of having to choose between voluntarily resigning or signing two false write-ups with the threat that she would subsequently be terminated based on the write-ups.  Tyler constructively discharged Ms. Dougherty by forcing her to work in a hostile work environment resulting from the discriminatory treatment to which she had been subjected.  Tyler terminated Ms. Dougherty. Due to Tyler's failure to investigate Ms. Dougherty's claims of discrimination, take any appropriate remedial action, Tyler's punishment of her, and Tyler's clear attempt to force her out, Ms. Dougherty had no option but to resign on November 16, 2007.

**3.b.     Defendant's Defenses**

       **Defendant's Defenses:[1]**

 Tyler denies that it discriminated against Plaintiff in any way.  To the contrary, the only action the Company took towards her—counseling her as to the Company's expectations regarding her performance and attitude—was based entirely on legitimate business reasons.

---

[1]  This statement is not intended to assert all of Tyler's defenses to Plaintiff's Complaint, and Tyler reserves its right to assert any and all applicable defenses.

**A.     Dougherty's retaliation claim**

As to Dougherty's retaliation claim, the Company took no "adverse employment action" under Title VII of the 1964 Civil Rights Act. In order to prove retaliation under Title VII, a plaintiff must prove "… that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006). Under *Burlington Northern*, not every employment action constitutes an adverse employment action under Title VII. To the contrary, the action taken by the employer must be sufficiently severe so as to dissuade a reasonable worker from making or supporting a claim of discrimination. Here, the Company took no action against Dougherty that would dissuade a reasonable employee from making a complaint of discrimination.

Moreover, it cannot be said that Dougherty complained of any conduct that she reasonably could have perceived as discriminatory. To the contrary, the only specific allegation of discrimination that Dougherty made was in connection with her supervisor's legitimate request that she send out a fax for him.

**B.     Dougherty's disability claim**

Not only did the Company not take any action against Dougherty as a result of her physical condition, the doctor's note she provided to the Company reveals that she is not a "qualified individual with a disability" as defined by the Americans with Disabilities Act (the "ADA"). To show she is "disabled", Dougherty must show that she is substantially limited in one or more major life activity. *See Wilson v. Comfort Systems,* 2007 U.S. App. LEXIS 28905, at **6-7 (10th Cir. 2007) (affirming summary judgment in favor of the employer on the basis that the employee failed to show he was disabled as defined in the ADA because there was no evidence

9

that he suffered from any substantial limitations in any major life activities, including work.); *see also Kliesen v. Board of County Comm'rs of the County of Morgan*, 2007 U.S. Dist. LEXIS 87091, at **9-10 (D.C. Colo. 2007)("In order to state a claim under the ADA, a plaintiff must articulate with precision the impairment alleged and the major life activity affected by that impairment." *Id*. at *9). The only information Dougherty provided to the Company—her doctor's note—clearly shows she is not limited in any major life activity. The doctor's note shows that Dougherty could perform the essential functions of her job with little if any accommodation. Accordingly, in the absence of some other proof that Dougherty is substantially limited in a major life activity, she is not "disabled" under the ADA and cannot legally maintain a cognizable claim. *See Wilson*, 2007 U.S. App. LEXIS 28905, at **6-7; *Kliesen,* 2007 U.S. Dist. LEXIS 87091, at **9-10.

    C.    **Dougherty's gender discrimination claims**

Finally, Dougherty has no evidence that her gender played any role in any decision affecting her employment. To the contrary, Tyler did not discriminate against Dougherty in any form or fashion. Rather, Tyler simply attempted to counsel Dougherty as to the Company's expectations regarding her performance and behavior towards other employees in the office.

### 4.  UNDISPUTED FACTS

The following facts are undisputed:

1.    Defendant is an "employer" within the meaning of Title VII.

2.    Ms. Dougherty commenced her employment at Tyler in August 2005. She was employed as a Network Administrator.

3.    Ms. Dougherty's job duties included installation and support of software for clients, administration of multiple domains, daily management of in-house technical support as

10

well as direct support to clients. The majority of Ms. Dougherty's clients were state and county governments.

4. Plaintiff's managers modified her job duties to ensure that she not lift objects weighing more than 15 pounds and allowed Plaintiff to walk and use the restroom when necessary. In addition, Defendant allowed Plaintiff to perform her job without traveling.

5. Plaintiff received disciplinary counseling forms at the meeting between her, her supervisor and Tyler's human resources personnel.

6. Plaintiff resigned her employment on or about November 16, 2007.

## 5.  COMPUTATION OF DAMAGES

A complete computation of damages will require expert calculations by an economist. However, Plaintiff provides the following estimates, subject to revision after professional review.

 a. Past wages: $165,000.00 (est.)

 b. Past benefits: $16,500.00 (est.)

 d. Future wages: $550,000.00 (est.)

 e. Future benefits: $55,000.00 (est.)

 f. Emotional distress: $300,000.00

 g. Exemplary, punitive and/or statutory damages: $300,000.00

In addition, Plaintiff seeks costs and attorney fees under applicable Federal and/or state law.

Defendant(s):

Defendant is not seeking any damages at this time.

## 6.  REPORT OF PRECONFERENCE DISCOVERY AND

## MEETING UNDER FED.R.CIV.P. 26(f)

a. Date of Rule 26(f) meeting: January 5, 2010

b. Names of each participant and each party represented: Plaintiff was represented by Rosemary Orsini and Defendant was represented by Tarek F.M. Saad and Paulo B McKeeby.

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made: Disclosures will be made on or before February 4, 2010.

d. Proposed changes, if any, in timing or requirement of disclosures under Fed.R.Civ.P. 26(a)(1): Yes

e. Statement concerning any agreements to conduct informal discovery:

The parties have discussed informal discovery.  At this time they are not aware of any informal discovery either party may wish to take, but agree to engage in such informal discovery as agreed to by the parties.

f. Statement concerning any other agreements or proposals to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system:

The parties intend to use a uniform exhibit numbering system.

g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form:

The parties agree that some discoverable information may exist in electronic format. Counsel for Plaintiff anticipates seeking discovery of emails and electronically stored documents concerning the performance of Plaintiff, Plaintiff's complaints of discrimination, basis for

reduction and restrictions of work duties compared to Plaintiff's male colleagues, basis for assigning Ms. Dougherty administrative tasks, Defendant's documentation.

The parties plan further discussions regarding the form of production for any discoverable ESI related to this matter. Counsel have agreed they will make a good faith effort to reach an agreement on production of ESI.

h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties certify as required by Fed. R. Civ. P. 26(f), they have discussed the possibilities for a prompt settlement or resolution of the case by alternative dispute resolution. The parties wish to continue to attempt to engage in informal settlement conferences among the parties and counsel prior to being ordered to incur the expense of enlisting a third-party mediator. Should these informal settlement conferences not be fruitful, either party reserves the right to seek more formal ADR; for instance court-annexed attorney mediation or private mediation after the close of discovery.

At this time, it appears premature to engage in mediation of this case since both parties require additional information to evaluate the case.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a. Any modifications any party proposes on the presumptive numbers of depositions or interrogatories contained in the federal rules: Yes.

b. Any limits any party proposes on the length of any deposition: No. 7 hours of testimony per deposition, as per Federal Rules.

c. Any limitations any party proposes on the number of requests for production of documents and/or requests for admissions: 30 requests for production of documents and 30 requests for admission per side.

d. Other Planning or Discovery Orders: None at this time.

### 9. CASE PLAN AND SCHEDULE

a. **Deadline for Joinder of Parties and Amendment of Pleadings**: 2/19/2010

b. **Discovery Cut-off:** 9/6/2010 (holiday)

c. **Dispositive Motion Deadline:** 10/21/2010

**d.  Expert Witness Disclosure:**

(1) Statement regarding anticipated fields of expert testimony, if any:

Plaintiff anticipates retaining an expert economist on damages and discriminatory employment practices. In addition, Plaintiff will retain her treating physician as expert.

(2) Statement regarding any limitations proposed on the use or number of expert witnesses: Three per side plus Plaintiff's treating physicians.

(3) The parties shall designate all experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before July 6, 2010.

(4) The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before August 6, 2010.

(5) Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2), no exception to the requirements of the rule will be allowed by stipulation of the parties unless the stipulation is approved by the court.

e.  **Deposition Schedule**[2]

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Deanna Dougherty | | | |
| 30b6 Representative of Tyler | | | |
| Mr. Bohanning | | | |
| Steve Nieman, CEO of Tyler | | | |
| Teresa Friel, HR | | | |
| Gable Miller | | | |
| Howard Loftis | | | |
| | | | |

f.  **Interrogatory Schedule**

All interrogatories must be served by August 4, 2010 so that answers may be served by the discovery deadline.

g.  **Schedule for Request for Production of Document and/or Admissions**

All requests for production of documents and requests for admissions must be served by August 4, 2010 so that answers may be served by the discovery deadline.

### 10.  DATES FOR FURTHER CONFERENCES

a.  A settlement conference will be held on April 27, 2010 at 9:00 o'clock a.m. It is hereby ordered that all settlement conferences that take place before the

---

[2] Defendant reserves the right to take the deposition of other individuals not included in this list.

magistrate judge shall be confidential. Pro se parties, attorneys, and client representatives with authority to settle must be present.

Each party shall submit a Confidential Settlement Statement to the magistrate judge on or before April 20, 2010 outlining the facts and issues, as well as the strengths and weaknesses of their case.

b.   Status Conferences will be held in this case at the following dates and times:

c.   A final pretrial conference will be held in this case by Judge Krieger.

## 11.  OTHER SCHEDULING ISSUES

a.   Statement of those discovery or scheduling issues, if any, on which counsel, after a good-faith effort, were unable to reach an agreement: None.

b.   Anticipated length of trial: 3 day jury trial.

c.   The parties do not request to conduct appropriate pretrial proceedings in the Court's facility as 212 N. Wahsatch Street, Colorado Springs, Colorado.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties. Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13.  AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

Dated this 5th day of February, 2010

                                            **BY THE COURT:**

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

APPROVED:

*Original signature of Rosemary Orsini on file at*
Burg Simpson Eldredge Hersh & Jardine, P.C.

*s/ Rosemary Orsini*
Rosemary Orsini
BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
Telephone: 303.792.5595
Facsimile:  303.708.0527
rorsini@burgsimpson.com

ATTORNEYS FOR PLAINTIFF
DEANNA DOUGHERTY

*s/Tarek F.M. Saad*
Tarek F.M. Saad
JIN, SCHAUER & SAAD LLC
600 17th Street, Suite 2700 South Tower
Denver, Colorado  80202
Telephone:  720.889.2211
Facsimile:  720.889.2222
tsaad@jinslaw.com

and

*s/Paul B. McKeeby*
Paulo B. McKeeby
(Pro Hac Vice Application Pending)
Texas Bar No. 00784571
John Bosco
(Pro Hac Vice Application Pending)
Texas Bar No. 24045533
MORGAN LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX  75201-7347
Telephone: 214.466.4000
Facsimile: 214.466.4001
paulo.mckeeby@morganlewis.com
john.bosco@morganlewis.com

ATTORNEYS FOR DEFENDANT
TYLER TECHNOLOGIES, INC.